UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
RANDOLPH N. FLOWERS,

                    Petitioner,          MEMORANDUM & ORDER
                                         14-CV-2743(JS)
        -against-

ADA PEREZ,

                    Respondent.
----------------------------------X
APPEARANCES:
For Petitioner:     Randolph N. Flowers, pro se
                    09-A-5132
                    Woodbourne Correctional Facility
                    99 Prison Road
                    P.O. Box 1000
                    Woodbourne, New York 12788

For Respondent:     Alyson Gill, Esq.
                    New York State Attorney General's Office
                    300 Motor Parkway, Suite 230
                    Hauppauge, New York 11788

                    Marian M. Tang, Esq.
                    District Attorney's Office, Suffolk County
                    Criminal Courts Building
                    200 Center Drive
                    Riverhead, New York 11901

SEYBERT, District Judge:

        In 2008, Randolph Flowers, along with two accomplices,

staged a home invasion where he struck the victim with a weapon.

After Flowers was arrested, a Suffolk County jury convicted him

of one count of first-degree burglary in violation of New York

Penal Law § 140.30(4) and one count of second-degree assault in

violation of New York Penal Law § 120.05(6).  His appeals proved

unsuccessful, and so Flowers filed this pro se Petition for a

writ of habeas corpus.  See 28 U.S.C. § 2254.  He raises five issues: (1) sufficiency of the evidence; (2) whether trial testimony violated People v. Trowbridge, 305 N.Y. 471, 113 N.E.2d 841 (1953), because of witness bolstering; (3) deficiencies in the grand jury proceeding; (4) whether his sentence was excessive and retaliatory; and (5) ineffective assistance of counsel.  For the following reasons, his Petition is DENIED in its entirety.

BACKGROUND[1]

The Court will start with a general overview, adding greater detail in the ensuing analysis.  As is the usual practice, the facts are viewed in the light most favorable to the verdict.  See Garbutt v. Conway, 668 F.3d 79, 80 (2d Cir. 2012).

I.   The Offense Conduct

---

[1] All dates refer to the year 2009 unless otherwise stated. Citations to the record are as follows: Tang Aff. (Docket Entry 7); Flowers's brief on direct appeal (Appellant's Br., Docket Entry 8 at 1–34); a letter from the Legal Aid Society dated June 27, 2012 (Legal Aid Ltr., Docket Entry 8 at 103–04); Flowers's Section 440.20 Motion (440.20 Mot., Docket Entry 8 at 109–27); Gaynor Flowers's Affidavit (Flowers's Aff., Docket Entry 8 at 126–27); the procedural history of the 440.20 motion (440.20 Decisions, Docket Entry 8 at 139, 178); 2/25 Tr. (Docket Entry 8-1 at 1–5); 5/11 Tr. (Docket Entry 8-1 at 27–216); 5/13 Tr. (Docket Entry 8-3 at 1–97); 5/14 Tr. (Docket Entry 8-3 at 98–217); 5/15 Tr. (Docket Entry 8-4 at 1–129); 5/18 Tr. (Docket Entry 8-4 at 130–210 & Docket Entry 8-5 at 1–81); 5/19 Tr. (Docket Entry 8-5 at 82–220); 5/20 Tr. (Docket Entry 8-6 at 1–97); 5/22 Tr. (Docket Entry 8-6 at 135–49); and the sentencing transcript (S. Tr., Docket Entry 8-6 at 150–63); Pet'r's Reply Br., (Docket Entry 11).

In the early hours of January 17, 2008, Randolph Flowers hatched a plan to rob his former landlord at a three-bedroom apartment in Huntington Station. (5/15 Tr. 47:23-48:3, 50:8-13, 63:8-20.) Flowers brought a silver B.B. gun, which resembled a pistol, and recruited two other men. (5/15 Tr. 51:3-52:17.) Donning black masks and gloves, the trio arrived at the apartment with the help of Daniel Dickinson, their getaway driver. (5/15 Tr. 53:5-25.)

Inside the apartment was Francisco Garcia, a Honduran immigrant, who awoke from a knock at the door. (5/14 Tr. 63:21-24, 66:14-25.) Guessing that his neighbor German Velasquez forgot his key, Garcia unlocked the door and opened it. The three men burst in, and Flowers smashed Garcia in the face with his gun. (5/14 Tr. 67:2-20, 69:8-15.) The men threw Garcia on his bed, kicked him, and stole at least one cell phone.[2] (5/14 Tr. 73:4-15; 5/15 Tr. 55:9-15.)

Meanwhile, Velasquez, who was already home, heard the commotion from Garcia's room. (5/15 Tr. 9:12-18.) Velasquez knocked on Garcia's door and threatened to call the police. (5/15 Tr. 10:14-16.) At this point, the intruders fled, and Velasquez went to the front door and watched the men run away

---

[2] Garcia was missing one of two cell phones and $125 in cash, but other testimony suggests that Flowers and his accomplices stole only two cell phones. (5/14 Tr. 75:20-76:3; 5/15 Tr. 55:9-15.)

from the house. (5/15 Tr. 11:3-20.) Velasquez identified Flowers as one of the perpetrators because the two had prior run-ins when Flowers lived in Garcia's room a few months earlier. (5/15 Tr. 4:17-5:25.)

Flowers and the accomplices returned to Dickinson's car, telling him that they "kicked somebody in the face, and somebody got hit with a gun." (5/15 Tr. 54:11-13.) Dickinson then drove the men to a friend's house and then went home himself. (5/15 Tr. 54:2-8.) Around the same time, Velasquez called 911 and informed them of the break-in. (5/15 Tr. 43:10-23.) Following a brief investigation, Flowers was arrested on February 2, 2008.[3] (5/18 Tr. 30:4-18.)

After a two-week trial, Flowers was convicted of Burglary in the first-degree and Assault in the second-degree.[4] (5/22 Tr. 10:9-16.) The State's case included testimony from a number of key witnesses: (1) the victim, Francisco Garcia, (5/14 Tr. 67:2-20, 69:8-25); (2) the other eyewitness, German Velasquez (5/15 Tr. 8:24-9:15); (3) the getaway driver, Daniel Dickinson, (5/15 Tr. 47:23-48:8, 49:14-50:13); (4) the 911 dispatcher, (5/13 Tr. 86:12-19, 89:14-25); (5) the crime scene

---

[3] One accomplice pled guilty to one count of Attempted Gang Assault in the second degree. The third accomplice is still at large. (Tang Aff. at 2 n.2.)

[4] Additional counts were dismissed before jury deliberations. (5/20 Tr. 2:11-15.)

officer, (5/14 Tr. 4:14–22, 8:11–18); (6) Officer Channon Rocchio, a first responder, (5/13 Tr. 33:6–14, 34:25–36:2); and (7) Detective Daniel Murphy, the lead detective in the case, (5/18 Tr. 2:22–23, 4:14–24).[5]

The defense presented Flowers's fiancée, Maureen Mohr, as an alibi witness. (5/19 Tr. 16:12–13, 18:19–20:24.) Flowers testified on his own behalf, asserting that he had no involvement. He explained that he could not run away, as Velasquez described, because he injured his leg in a motorcycle accident. (5/19 Tr. 78:14–19, 79:6–17, 80:2–6, 84:22–85:14.)

After his conviction, the trial court sentenced Flowers to concurrent terms: a fifteen-year term followed by five years of supervised release for first-degree burglary and a five-year term followed by three years of supervised release for second-degree assault. (S. Tr. 12:5–13.) At his sentencing, Flowers's lawyer had delivered an impassioned plea, which persuaded the judge to grant a sentence lower than the maximum. (S. Tr. 12:18–25.)

One other point about the trial is relevant here. During jury selection, Flowers's lawyer informed the court that he had received a partial Rosario package, which included the victim's grand jury testimony. The victim's testimony

---

[5] As relevant to the appellate court's decision, Detective Murphy testified that Velasquez saw a confirmatory photo array and immediately picked out Flowers. (5/18 Tr. 13:4–11.)

established the date of the attack as August 17, 2007, but the indictment established the correct date: January 17, 2008. (5/11 Tr. 28:12-24.) Using this "incorrect" date as support, Flowers's lawyer made an application to the court to dismiss the indictment as "based upon insufficient facts inconsistent with the Indictment itself." (5/11 Tr. 29:15-25.) The prosecutor contested the motion, arguing that the sole reference to the incorrect date was likely a typographical error because the correct date was provided by German Velasquez, other witnesses, the felony complaint, and the bill of particulars. (5/11 Tr. 33:10-13, 32:5-24.) The court ultimately denied the motion, in part, because it did not find that Flowers suffered any prejudice. (5/11 Tr. 34:6-13.) The court also noted that any inconsistencies were "fodder for cross-examination." (5/11 Tr. 34:14-17.)

## II. Post-Trial Proceedings

Flowers, with aid of appellate counsel, appealed to the Second Department, presenting four bases of error: (1) the evidence was legally insufficient for a jury to convict him; (2) the trial court improperly allowed state witnesses to bolster testimony; (3) he was denied his right to a grand jury; and (4) the sentence was excessive. (Appellant's Br. at 7.)[6]

---

[6] The page numbers correspond with CM/ECF's numeration of Docket Entry 8.

Unpersuaded, the Second Department affirmed his conviction. People v. Flowers, 95 A.D.3d 1233, 1233-34, 945 N.Y.S.2d 701, 702-03 (2d Dep't 2012). First, the sufficiency-of-the-evidence argument was "unpreserved for appellate review," the court said, and, at any rate, there was no shortage of evidence at trial to support the convictions. Id. at 1233-34, 945 N.Y.S.2d at 702-03. Second, the bolstering argument was "unpreserved for appellate review, as defense counsel either failed to object to the challenged testimony, or objected on general hearsay grounds." Id. at 1234, 945 N.Y.S.2d at 703. The court further held that Detective Murphy's "testimony regarding the complainant's identification of the defendant from a photo array was improper, the error was harmless" because the trial evidence was "overwhelming" and "there was no significant probability that, but for the error, the jury would have acquitted the defendant." Id. Third, the court determined that the grand-jury arguments were "not reviewable" because Flowers's "guilt was proven beyond a reasonable doubt at trial" and that alternatively, the arguments lacked merit. Id. Finally, the court determined that "[t]he sentence imposed was not excessive." Id.

Flowers requested leave to appeal, which was denied by the New York Court of Appeals. People v. Flowers, 19 N.Y.3d 1025, 978 N.E.2d 110, 953 N.Y.S.2d 558 (2012).

Flowers then filed a <u>pro</u> <u>se</u> motion to set aside his sentence under New York Criminal Procedure Law § 440.20. (440.20 Mot. at 109–10.)  In this 440.20 motion, he argued that his sentence was excessive and in retaliation for his decision to reject a plea deal and proceed to trial.  (<u>Id.</u> at 111–12.) He also argued that his lawyer was ineffective during the sentencing phase.  (<u>Id.</u> at 114–17.)  Flowers attached a sworn statement from his mother detailing a supposed plea deal that the trial judge offered during jury deliberations.

The Suffolk County Supreme Court denied the motion. (440.20 Decisions at 139.)  The court concluded that Flowers's ineffective-assistance-of-counsel claim was based on the trial record and accordingly "not available for review under Article 440 of the Criminal Procedure Law."  (<u>Id.</u>)  As for the sentencing claims, the court determined that Flowers "had a full and fair opportunity to litigate his sentence" before the Second Department and thus rejected those claims.  (<u>Id.</u>)  Flowers then sought leave to appeal to the Second Department, but his request was denied.  (<u>Id.</u> at 178.)  This Petition followed.

## DISCUSSION

### I.  The Legal Standard

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners." Williams v. Taylor, 529 U.S. 362, 399, 120 S. Ct. 1495, 1516, 146 L. Ed. 2d 389 (2000). While not a rubber stamp, the statute gives substantial deference to state court decisions. See Virginia v. LeBlanc, 137 S. Ct. 1726, 1729, 198 L. Ed. 2d 186 (2017). The rationale is straightforward: A high bar for relief "avoids unnecessarily 'disturbing the State's significant interest in repose for concluded litigation, denying society the right to punish some admitted offenders, and intruding on state sovereignty to a degree matched by few exercises of federal judicial authority.'" Id. (quoting Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011)) (brackets omitted).

To warrant relief, a state prisoner must show "that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Assuming that his claims are cognizable in federal court, the prisoner must comply with three requirements; he must: (1) exhaust state remedies, (2) follow procedural requirements, and (3) satisfy AEDPA's steep standard of review. See 28 U.S.C. § 2254.

To begin, a prisoner must have exhausted state remedies by presenting his claims to the state court for review. 28 U.S.C. § 2254(b)(1)(A). This requirement advances comity, finality, and federalism interests by providing state courts with the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" See Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971)); Davila v. Davis, 137 S. Ct. 2058, 2070, 198 L. Ed. 2d 603 (2017).

The next step also provides due deference to state functions. A federal court will not review a habeas petition if the prisoner failed to satisfy state court procedural requirements for presenting his claims, thereby "depriv[ing] the state courts of an opportunity to address those claims." Coleman v. Thompson, 501 U.S. 722, 732, 111 S. Ct. 2546, 2555, 115 L. Ed. 2d 640 (1991). This procedural bar applies even if the state court addressed the merits in the alternative but decided the claim on independent procedural grounds. Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). To secure review of defaulted claims, a state prisoner must show either (1) "cause for the default and actual prejudice as a result" or (2) actual innocence. Coleman, 501 U.S. at 750, 111 S. Ct. at 2565.

Finally, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13, 120 S. Ct. at 1523. A decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413, 120 S. Ct. at 1523. This standard does not require that all reasonable jurists agree that the state court was wrong; rather,

the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" <u>Jones</u>, 229 F.3d at 119 (quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" <u>Jones v. Murphy</u>, 694 F.3d 225, 234 (2d Cir. 2012) (quoting <u>Hardy v. Cross</u>, 565 U.S. 65, 66, 132 S. Ct. 490, 491, 181 L. Ed. 2d 468 (2011)). This standard is "'difficult to meet,'" and deliberately so. <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (quoting <u>Metrish v. Lancaster</u>, 569 U.S. 351, ---, 133 S. Ct. 1781, 1786, 185 L. Ed. 2d 988 (2013)), <u>reh'g denied</u>, 134 S. Ct. 2835 (2014). Section 2254(d), as amended by AEDPA, "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." <u>Harrington</u>, 562 U.S. at 102, 131 S. Ct. at 786. Thus, a petition must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u> at 103, 131 S. Ct. at 786–87.

## II. <u>The Petition</u>

Flowers renews the arguments made in his direct appeal and his 440.20 motion: (1) the evidence was legally insufficient

for a jury to convict him, (Pet. at 3); (2) the trial allowed witness bolstering in violation of People v. Trowbridge, 305 N.Y. 471, 113 N.E.2d 841 (1953), (id. at 7); (3) Flowers was deprived of his right to a grand jury because of deficiencies with the indictment, (id. at 6, 9); (4) the sentence imposed was excessive and retaliatory, (id. at 3, 10); and (5) his trial counsel was constitutionally ineffective, (id. at 4).

Pro se submissions, like those from Flowers, require flexible construction, and so the Court must interpret them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). But this leeway does not excuse Flowers "'from compl[ying] with relevant rules of procedural and substantive law,'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. Nov. 1981)), as he "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated," Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

A.   Sufficiency of the Evidence

First, Flowers challenges the sufficiency of the evidence to support his convictions.[7]   (Pet. at 3.)   His main

---

[7] If Flowers also challenges the weight of the evidence, that claim is not cognizable.  See Correa v. Duncan, 172 F. Supp. 2d

argument is that the victim established the incorrect date of the crime during his grand jury testimony. (Legal Aid Ltr. at 103-04.) Any corrections, Flowers argues, "did not establish the facts of the crime charged, but simply proved [his] presence at the incident location at that later date." (Id. at 103.) The Second Department, which issued the "last reasoned state judgment," Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000), held that this claim was "unpreserved for appellate review, as defense counsel made only a general motion for a trial order of dismissal based upon the People's alleged failure to make out a prima facie case," Flowers, 95 A.D.3d at 1233-34, 945 N.Y.S.2d at 702-03. Thus, Flowers's claim is procedurally defaulted. Of course, Flowers can secure review of this default claim if he can show either (1) cause and ensuing prejudice or (2) actual innocence. Coleman, 501 U.S. at 750, 111 S. Ct. at 2565. But nothing in the record supports either exception.

Even putting aside this procedural roadblock, the claim is meritless.[8] A defendant challenging the sufficiency of

---

378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."); Douglas v. Portuondo, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002) (recognizing that a federal court can address legal sufficiency claims but not "weight of the evidence" claims).

[8] The Second Department's alternative ruling on the merits does not change this outcome. See Flowers, 95 A.D.3d at 1233, 945

the evidence "'bears a heavy burden, as the standard of review is exceedingly deferential.'" United States v. Brock, 789 F.3d 60, 63 (2d Cir. 2015) (quoting United States v. Coplan, 703 F.3d 46, 62 (2d Cir. 2012)).  The Court "'must view the evidence in the light most favorable to the Government, crediting every inference that could have been drawn in the Government's favor, and deferring to the jury's assessment of witness credibility.'" Id. (quoting U.S. v. Chavez, 549 F.3d 119, 124 (2d Cir. 2008). The verdict will stand if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id.

To evaluate the sufficiency of the evidence, "[a] federal court must look to state law to determine the elements of the crime." Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999).  Pertinently, a person is guilty of first-degree burglary when:

> [H]e knowingly enters or remains unlawfully
> in a dwelling with intent to commit a crime
> therein, and when, in effecting entry or
> while in the dwelling or in immediate flight

---

N.Y.S.2d at 702 ("In any event, viewing the evidence in the light most favorable to the prosecution, we find it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt.") (internal citation omitted).  Indeed, "federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default," Murden v. Artuz, 497 F.3d 178, 191 (2d Cir. 2007), and the Second Circuit has "decline[d] to read a contingent observation as an 'adjudication on the merits.'"  Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007).

therefrom, he or another participant in the
crime:

\* \* \*

4. Displays what appears to be a pistol,
revolver, rifle, shotgun, machine gun or
other firearm. . . .

NEW YORK PENAL LAW § 140.30(4). A person is guilty of second-

degree assault if:

In the course of and in furtherance of the
commission or attempted commission of a
felony, other than a felony defined in
article one hundred thirty which requires
corroboration for conviction, or of
immediate flight therefrom, he, or another
participant if there be any, causes physical
injury to a person other than one of the
participants[.]

Id. § 120.05(6).

Addressing these crimes in tandem, the Court concludes

that Flowers has not carried his heavy burden. The victim

testified about the facts of the home invasion and described how

he was struck in the head with a weapon. (5/14 Tr. 67:15-20.)

German Velasquez, a neighbor, overheard the commotion and

stated, with complete certainty, that he saw Flowers and the

accomplices fleeing the crime scene. (5/15 Tr. 9:17-18, 11:3-

20, 15:8-11.) Daniel Dickinson, the getaway driver, also placed

Flowers at the crime scene, testifying that the men stole

Garcia's property. (5/15 Tr. 50:11-13, 55:9-14.) On top of

that, the State's case included testimony from Detective Murphy

and Officer Rocchio, both of whom provided details about their investigation. (5/13 Tr. 37:22–39:12, 5/18 Tr. 13:4–11.)

To be sure, Flowers challenged this evidence, stating that he was at home with his fiancée on the night in question. But at the same time, the State offered a bevy of witnesses, which, at various points, contradicted this claim. And so the Court concludes that the evidence was legally sufficient to convict Flowers.

B.  Bolstering Testimony

Flowers also contends that, (Pet. at 7), trial testimony violated People v. Trowbridge, 305 N.Y. 471, 113 N.E.2d 841 (1953), which prohibits witnesses from repeating a defendant identification made by another person. Id. at 477, 113 N.E.2d at 843. As Flowers tells it, the trial court improperly allowed Detective Murphy and Officer Rocchio to reiterate German Velasquez's eyewitness account. (Pet. at 7.) Here are snippets of their respective testimony:

> OFFICER ROCCHIO: Both individuals, Francisco Garcia through broken-up English, and German [Velasquez] translating basically for Francisco Garcia, described it as individuals breaking in, they had a handgun, and they beat him up and fled the scene. So that categorized it differently. (5/13 Tr. 39:25–40:6.)

*    *    *

> DETECTIVE MURPHY: Mr. Velasquez had indicated that he knew who was involved in

> this crime.  That he'd seen him there, he
> was a prior tenant, Mr. Flowers.  I then
> provided what we consider a photo array,
> which is six photos on a piece of paper, and
> asked him to confirm--not to confirm.  Asked
> him on a sheet of paper if he recognized
> anybody.  He then immediately picked out Mr.
> Flowers.  (5/18 Tr. 13:4-11.)

Bolstering arguments, however, do "not rise to the level of a constitutional claim." Slavin v. Artus, No. 05-CV-0870, 2010 WL 185108, at *7 (E.D.N.Y. Jan. 13, 2010) (collecting cases).  "The concept of 'bolstering' really has no place as an issue in criminal jurisprudence based on the United States Constitution. It is at most a New York State rule or policy, derived from People v. Trowbridge . . . ." Snow v. Reid, 619 F. Supp. 579, 582 (S.D.N.Y. 1985).  In sum, this claim fails to present a cognizable issue for federal courts.

### C.   Grand Jury Deficiencies

Shifting to the grand-jury argument, Flowers asserts that the indictment contained a single reference to an incorrect date, thereby depriving him of his right to a grand jury.  (Pet. at 6, 9.)  This, too, presents no federal issue for this Court to consider.  See Davis v. Mantello, 42 F. App'x 488, 490–91 (2d Cir. 2002) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court.").  In New York, a grand jury indictment arises from the "State Constitution and other state laws . . . and

federal habeas relief may not be granted for violations of state law." Robinson v. LaClair, No. 09-CV-3501, 2011 WL 115490, at *8 (E.D.N.Y. Jan. 13, 2011). And "even if a defective state indictment constituted proper grounds for federal habeas review, any injury that petitioner claims from the defective indictment was cured by the jury's verdict of guilt beyond a reasonable doubt at his trial." Id. Thus, this claim also fails.

D. Sentencing Errors

Next, Flowers argues that his sentence was excessive and in retaliation for rejecting a plea deal. (Pet. at 3, 10.) To begin, there are no grounds for habeas corpus relief when, as here, the sentence fits within statutory limits. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992). Flowers's fifteen-year sentence, (S. Tr. 12:5–8), is less than the twenty-year maximum permissible for class B felonies like first-degree burglary, New York Penal Law §§ 70.02(3)(a), 140.30(4). For a class D felony like second-degree assault, the maximum is seven years, id. §§ 70.02(3)(a), 120.05(6), and Flowers's sentence was five years, (S. Tr. 12:7–9). Thus, neither sentence is excessive because they both fall within the permissible ranges.[9]

---

[9] Flowers requests judicial notice of the fact that, (Pet'r's Reply Br. at 9), one of his accomplices pled guilty and received three years of probation. See FED. R. EVID. 201(b) (allowing courts to take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot

That leaves the retaliation argument. Generously construing his arguments, Flowers relies on statements made by the trial judge throughout the case. For example, the judge said this before jury selection:

> THE COURT: As far as I can see--and I know your attorney has spoken to you about it-- this is a case that I don't think you're going to win on trial. The chances of winning are not good. Largely because there's DNA evidence that's involved that will hurt your chances very, very greatly. . . . [T]he absolute minimum if you lost at trial is five years and it could be as much as twenty five years. . . . They're willing to take Count 2 of the indictment in satisfaction of the entire indictment with a bargained-for four years sentence. . . . As of today, I don't know whether they'll offer you this plea again.

(2/25 Tr. 2:10-4:10.) The trial judge reiterated his dim view of Flowers's chances right before the jury began deliberations. (5/21 Tr. 36:9-16.) Yet there is no indication in the record that the trial judge punished Flowers with a heavier sentence. True, Flowers's plea offer (four years) was less than his ultimate sentence (fifteen years), (2/25 Tr. 3:17-22; S. Tr. 12:5-8), but that is the point of the bargaining process: accept a deal or take your chances at trial. With this in mind, courts will not presume a retaliatory motive based on "the mere fact that the sentence imposed following trial is greater than the

_____

reasonably be questioned"). But this request is irrelevant because Flowers was sentenced within permissible ranges.

offer made during plea negotiations." <u>Walker v. Walker</u>, 259 F.

Supp. 2d 221, 226 (E.D.N.Y. 2003); <u>Echevarria-Perez v. Burge</u>,

779 F. Supp. 2d 326, 338 (W.D.N.Y 2011).

<u>White v. Lamas</u>, 905 F. Supp. 2d 624 (E.D. Pa. 2012),

which Flowers relies on, offers no assistance. There, the trial

judge imposed the maximum sentence in retaliation, the district

court concluded, because the petitioner had rejected a lenient

plea deal. <u>Id.</u> at 642. In reaching this conclusion, the court

evaluated the judge's comments during the sentencing hearing:

- "I would have expected a man of your stature not to make
  a family go through that incredibly painful trial for a
  case that was not winnable."

- The "Commonwealth made you what I deemed to be a cake
  offer. It was a cake offer. . . . You threw all of that
  back and you rolled the dice."

- You "had that opportunity to get less [than the minimum
  sentence]. It's not appropriate to give you a three to
  six minimum. It's really not."

<u>Id.</u> (internal quotation marks omitted) (alteration in original).

"These comments made in the context of sentencing," the court

said, show that the judge "gave undue consideration to

petitioner's decision to reject the plea offer and proceed to

trial." <u>Id.</u> at 642-43. And for present purposes, the court

made an important observation: "In cases where petitioners have

unsuccessfully presented a claim of judicial vindictiveness, the

facts show that the judicial comments at issue were <u>not</u> made in

the sentencing context." <u>Id.</u> at 643. That is the case here.

Although the judge challenged Flowers's decision to reject his plea offer, those comments occurred outside of the sentencing colloquy. Indeed, during the sentencing phase, the judge focused on the fact that "the trial brought out several things that are disturbing." (S. Tr. 11:9–10.) For example, the trial judge criticized Flowers for presenting his fiancée as an alibi witness in the face of overwhelming evidence. (S. Tr. 11:19–24.) The trial judge also worried that the victim was targeted because he was an immigrant and perhaps less likely to report the crime. (S. Tr. 11:11–14.) In other words, the record lacks evidence that the trial judge made his decision based on the plea deal. Cf. Carter v. Mooney, No. 15-CV-4896, 2016 WL 8731450, at *17–18 (E.D. Pa. June 6, 2016) (distinguishing White v. Lamas because "[p]etitioner's disingenuous letter motivated the judge's sentencing, not petitioner's earlier rejection of the plea offer"), adopted by, 2017 WL 1331710 (E.D. Pa. Jan. 20, 2017). Thus, the Court concludes that Flowers has failed to provide evidence of retaliation.

One other issue requires attention. In support of his 440.20 motion, Flowers attached a sworn affidavit in which his mother states that the trial judge made an off-the-record plea offer during jury deliberations. (Flowers Aff. at 126.) But she concedes that she was neither present during this supposed offer nor did she understand what was going on at the time.

(Id. at 126–27.)  What is more, there is no other mention of this incident.  Even if it did occur, the trial judge made no indication that Flowers's rejection of the deal motivated his sentencing decision, as evidenced by the sentencing colloquy. Thus, the Court concludes that Flowers' sentence was neither excessive nor retaliatory.

E.    Ineffective Assistance of Counsel

Finally, Flowers argues that he was denied his Sixth Amendment right to counsel because his trial counsel failed to make sentencing objections.  (Pet. at 4.)  As a general principle, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984).  After all, "there are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."  Id.  To overcome this presumption, Flowers must establish two elements: deficient performance and prejudice.  Id. at 688–92, 104 S. Ct. at 2064–67.  In reviewing the totality of the evidence, the Court must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt."  Burt v. Titlow, 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170, 190, 131 S.

Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011)). Bearing in mind this deferential standard, it is no surprise that "the great majority of habeas petitions that allege constitutionally ineffective counsel" fail. Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

To establish deficient performance, Flowers must prove that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S. Ct. at 2064. But even if Flowers can show deficient performance, he must also establish prejudice--that is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694, 104 S. Ct. at 2068. A reasonable probability "lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'" Lindstadt, 239 F.3d at 204 (quoting Strickland, 466 U.S. at 693, 104 S. Ct. at 2067-68)). "In the context of sentencing, the petitioner must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different." Garafola v. United States, 909 F. Supp. 2d 313, 331 (S.D.N.Y. 2012).

The Court concludes that Flowers's lawyer "advocated leniency in sentencing," and "while counsel could attempt to advocate in behalf of a client for a more lenient sentence, he

24

could not object as a matter of law to these legally imposed sentences." See Willson v. Berbary, 421 F. Supp. 2d 589, 603 (W.D.N.Y. 2006). Counsel, for instance, highlighted his client's character and history of nonviolent crimes. (S. Tr. 4:16-23, 5:6-12.) Counsel also suggested that the reason Flowers rejected the plea offer was his fear of incarceration. (S. Tr. 5:6-12, 6:7-11.) Counsel further explained his client's remorse and the low chance of recidivism. (S. Tr. 7:14-23, 8:14-20.) Most importantly, counsel's advocacy convinced the judge to lower Flowers's sentence. (S. Tr. 12:18-22 ("THE COURT: So your attorney did a good job for you with persuading me to sentence you as I have. . . . [B]ecause to be truthful with you, up to this morning I was contemplating the maximum sentence.").) For these reasons, Flowers' ineffective-assistance-of-counsel claim fails.

## CONCLUSION

The Petitioner's writ of habeas corpus (Docket Entry 1) is DENIED. The Court declines to issue a certificate of appealability because the Petitioner has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2). The Court also certifies that any appeal of this Order would not be taken in good faith, and thus his in forma pauperis status is DENIED for the purposes of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S.

Ct. 917, 921, 8 L. Ed. 2d 21 (1962).  The Clerk of the Court is
respectfully directed to CLOSE this case and mail copies of this
Order to the pro se litigant.


                              SO ORDERED.


                              /s/ JOANNA SEYBERT_____
                              Joanna Seybert, U.S.D.J.

Dated:      August __22__, 2017
            Central Islip, New York